In the matter of WILSON WALKER.

*Contempt—" Purging."*

1. It is unlawful to imprison for more than thirty days for a contempt of court. Bat. Rev., ch. 24, § 2.

2. Where the answer to a rule to show cause why one should not be attached for contempt negatives under oath any intentional disrespect to the court or purpose to obstruct its process, the rule should be discharged.

(*Ex Parte Moore*, 63 N. C., 397 ; *Bond* v. *Bond*, 69 N. C., 97, cited and approved.)

PROCEEDING for Contempt, heard at Chambers, Spring Term, 1879, of PASQUOTANK Superior Court, before *Avery, J.*

Upon the hearing the court adjudged that Walker was guilty and ordered him to be imprisoned, from which judgment he appealed.

*Messrs. A. M. Moore* and *Gilliam & Gatling*, for Walker.
*Messrs. Pruden & Shaw* and *J. P. Whedbee, contra.*

DILLARD, J. On the petition of Quentin F. Simpson for a writ of *habeas corpus* to get his daughter, Eliza Simpson, a writ was issued directed to Emily Corbet and Wilson Walker, commanding them to produce the body of the child, with the cause of her caption and detention, before the judge of the superior court on the first day of April, 1879, at chambers in the town of Edenton, which writ was returned executed on Walker and not found as to Corbet. At the return day Walker appeared before His Honor without the child, and on that day another writ was directed to issue to the same persons returnable at chambers on the 16th of April, together with a rule to show cause why they should not be fined for a contempt in disobeying and avoiding the former writ, and this writ was duly served on both of the parties.

On the next day, to wit, on the 2nd of April, Walker made affidavit of the willingness and purpose of himself and Emily Corbet to surrender the child, and offered to do so if an order of the court to that effect were made, and thereupon the court ordered that they deliver the child to one Jackson, the agent of the father, and pay him twenty dollars, and also pay the other costs on or before the 17th day of April, and in default thereof, that they appear before him at a time and place named and show cause against being attached under the rule which had already been served on them.

Under this order Walker and Corbet waited upon the agent of the father and paid him the money required, and

IN RE WALKER.

Walker delivered the child to Jackson, and the child being frightened and clinging to Mrs. Corbet, her grandmother, Mrs. Corbet refused to let him take the child but offered to go to Norfolk where the father was and deliver the child to him. This was assented to by the agent and also by the father by telegraph, and accordingly on the 10th of April Jackson, the agent, and Mrs. Corbet took the boat and went to Norfolk, and on their arrival Mrs. Corbet retained counsel and took out legal proceedings against the father to recover compensation for raising the child.

After these proceedings, notice was given to Walker that the rule for contempt which had been served on him would be insisted on, and pursuant thereto Walker attended before His Honor on the return day and filed an answer to the rule, and on the hearing His Honor found as facts that Walker, on the service of the writ of *habeas corpus* on him, caused notice of such service to be sent to Emily Corbet, in whose possession the child was, in order to enable her to avoid service on herself, and that Walker since he was put under the rule to answer for an alleged contempt, aided in sending Emily Corbet to Virginia, and in there instituting legal proceedings with intent to hinder, delay or prevent the execution of the orders of the court. Upon these facts it was adjudged by the court that Walker was guilty of contempt and he was sentenced to imprisonment in the jail for ninety days, from which judgment the appeal is taken.

In cases of alleged contempt out of the presence of the court, the practice is to have a foundation laid by facts shown forth by affidavit or otherwise, constituting a *prima facie* case, and then by a rule to put the accused to show cause against the attachment by an answer denying the alleged facts, of which he had notice in the rule or on the record, or excusing his conduct; or where the gravamen of the charge rested on intention, by a disavowal of the imputed purpose. 4 Blk., 286; 3 Whar. Cr. Law, 3449, 50; *Ex parte Moore*, 63.

7

N. C., 397. According to the answer filed, Walker acquitted himself from any charge of wilful disobedience to the writ in the non-production of the child before His Honor on the 1st day of April, by the fact that he had never had the possession and control of her, and of this opinion was His Honor, as he found no fact to the contrary in his judgment, and hence as to this point it is to be taken that Walker personally was guilty of no contempt. But it is found by the court below that Walker, on the service of the writ on him caused notice of such service to be sent to Emily Corbet who had the custody and control of the child, in order that she might avoid the service of the writ on her, and that he, since the service of the rule to show cause, aided in sending Emily Corbet to Virginia and in the institution of legal proceedings in that state, with the intent to hinder, delay or prevent the execution of the orders of the court, and herein it is claimed that Walker was constructively guilty of a disobedience of the writ.

Manifestly as to both these grounds of contempt the existence of an intention to hinder and obstruct the service of the writ on Emily Corbet was requisite. Walker may have given notice of the service of the writ on him with no intent thereby to aid or encourage Corbet to get out of the way of the sheriff. And as to the aid given in sending her to Virginia with the child, and in the institution of suit there, it had been agreed on by the father and his agent, Jackson, that Mrs. Corbet should go with the child to Norfolk, Virginia, and deliver her to the father, and it may be that the aid given was upon the humane intent to deliver the child to the father rather than to a stranger with whom she was unwilling to go, and not upon any intent to obstruct or evade the order of the judge.

How this essential fact of intention in the constitution of the contempt was, was a matter within the breast of Walker, and one to which he should have been required to purge

himself in answer to the rule, or on special interrogations put to him by the court; and if he was not so required, then His Honor should not have proceeded to adjudge the contempt unless on refusal to respond by Walker. But as we understand the rule and the answer thereto the said Walker fully acquitted himself by averring on his oath that if his course in the matter was wrong, it was through ignorance and with no disrespect to the court nor disposition to disobey His Honor's orders and decrees.

The judgment pronounced was certainly erroneous (if otherwise correct) in that it subjected Walker to imprisonment for ninety days instead of thirty days as limited by act of assembly. But all intentional disrespect to the court and purpose of hindrance or obstruction to the process of the court having been negatived by the answer, in our opinion the court should have discharged the rule and not proceeded to find intents contrary to the answer and adjudged any imprisonment at all. *Ex parte Moore, supra; Bond v. Bond,* 69 N. C., 97.

Error.                                         Reversed.